# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN PEGLEY, | )<br>)<br>) |
| Plaintiff, | )<br>) Civil Action No. 17-732 |
| v. | )<br>) Hon. Nora Barry Fischer |
| JARED ROLES et al., | )<br>) |
| Defendants. | ) |

## MEMORANDUM ORDER

Presently before the Court is Defendants' Brief Concerning the Application of the Apex Doctrine to the Request for the Deposition of Jonathan Marks, (Docket No. [54]), and Plaintiff's response in opposition, (Docket No. [55]). After careful consideration of the parties' submissions, and for the following reasons, Defendants' request that the Court enter a protective order prohibiting the deposition of Marks, (Docket No. [54]), is DENIED.

In so holding, the Court notes that this case arises from a vehicular accident. On March 4, 2017, Plaintiff was operating a 2017 Chevy Sonic automobile, which was fully stopped and stationary, with its four-way flashers blinking, in the right-hand southbound lane on interstate 79 in Franklin Township, Greene County, Pennsylvania. (Docket No. 1 at ¶¶ 11, 12, 17). While operating a tractor-trailer, Defendant Jared Roles smashed into the rear of Plaintiff's vehicle, causing severe, permanent, catastrophic, and life threatening personal injuries to Plaintiff. (*Id.* at ¶¶ 18, 19). Roles was operating the tractor-trailer as an employee of Defendant Quantum Environmental Services ("ET360"), and the tractor-trailer, which was owned by Defendant Allied Truck Leasing, LLC, was leased directly to ET360. (*Id.* at ¶¶ 3, 5, 13). In Counts II and III of his Complaint, Plaintiff asserts claims against ET360 for vicarious liability and for its negligence. (*Id.*

1

at ¶¶ 29-46).[1]

In support of their request that the Court enter a protective order prohibiting the deposition of Marks, Defendants argue that Marks does not have any first-hand knowledge of the underlying facts relating to this matter; that he did not have any involvement in the hiring, training, or supervision of Roles; and that Bobby Elder and Jerry James can testify to the relevant facts in this case without involving him. (Docket No. 54 at 4). Defendants further assert that the apex doctrine applies "to prevent the exact harassing discovery tactics that Plaintiff has employed here." (*Id.* at 5).

In response, Plaintiff argues that Marks is the only "founding member" and is one of only two "executive owners" of ET360. (Docket No. 55 at 1-2). Plaintiff contends that he seeks to depose Marks because of his involvement in all aspects of ET360, as he formed it, shaped it, and is identified on websites and documents as ET360's Member-Owner, Registered Agent, and Managing Member. (*Id.* at 2, 6.). Plaintiff further notes that as ET360's "safety administrator," Marks is responsible for the training of personnel, maintenance of training records, random compliance inspections, and hazard assessments. (*Id.* at 6). Finally, Plaintiff asserts that in his role as the Designated Employee Representative for ET360's Drug, Alcohol, and Contraband Policy, Marks was the only authorized recipient of Roles's drug test results, which were positive for methamphetamines. (*Id.* at 6-7). Plaintiff attaches documents in support of his position. (Docket Nos. 55-1, 55-2, 55-3, 55-4, 55-5, 55-6, 55-7, 55-8, 55-9, 55-10, 55-11).

Federal Rule of Civil Procedure 26, which governs discovery, provides:

---

[1] The Court notes that the parties have failed to expedite discovery in this matter. To this end, on January 12, 2018, at Plaintiff's counsel's request, the Court convened a telephonic status conference, at which time the parties set forth their discovery disputes as to medical records and depositions. (Docket No. 49). Noting the parties' failure to meet the deadlines set forth in the Court's Order granting Defendants' motion to modify the deadlines to conduct alternative dispute resolution, the Court admonished the parties to work together to achieve the just, speedy, and economical resolution of this case and to confer prior to seeking intervention by the Court. (Docket No. 50).

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1); *see also see Cole's Wexford Hotel, Inc. v. Highmark, Inc.*, 209 F. Supp. 3d 810, 823 (W.D. Pa. 2016) ("[T]he scope of all discovery is limited to matter that is relevant to the claims or defenses in the case and proportional to what is at stake in a given case.").

Federal Rule of Civil Procedure 26(c) authorizes that, "for good cause," a court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). A showing of "good cause" is a threshold requirement for the protection of discovery materials. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984) (citation omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not support a showing of good cause. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).

In determining whether "good cause" exists under Rule 26(c), the Third Circuit has enumerated the following factors that may be considered: (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6)

whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public. *See Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citing *Pansy*, 23 F.3d at 787-91). A party desiring a protective order must demonstrate specifically, through an application of these factors, that disclosure would work a clearly defined and serious injury upon him. *See Pansy*, 23 F.3d at 786.

Having considered the parties' arguments against the facts of this case as the Court knows them, the Court finds that Plaintiff's request to depose Marks satisfies Rule 26(b)(1) and that Defendants have failed to demonstrate good cause under Rule 26(c). With respect to Rule 26(b)(1), the issues at stake are certainly of importance to Plaintiff, who sustained severe injuries as a result of the described explosion. Plaintiff's injuries as described are more than significant and are long-lasting. The Court presumes that Plaintiff has also incurred hefty medical bills and other losses.[2] Defendants have greater resources and greater access to the information pertaining to both the claims and defenses.

Further, the deposition of Marks is important in resolving the issues pertaining to potential liability, and the likely benefit of such proposed discovery outweighs its burden or expense. To this end, Plaintiff's exhibits show that Marks is ET360's member and registered agent. (*See* Docket Nos. 55-1, 55-2, 55-3). Although Marks denies having served as ET360's Safety Program Administrator in an affidavit filed in support of Defendants' position, ET360's "Safety Program" documents, dated Match 15, 2016, identify Marks as the Safety Program Administrator. (Docket Nos. 54-1, 55-4, 55-5). Marks also posted advertisements seeking applications for employment at ET360. (Docket No. 55-6). Significantly, ET360's Drug, Alcohol, and Contraband Policy, dated

---

[2] Indeed, the parties have advised the Court that over $11,000,000.00 in damages are at issue in this matter. At the Case Management Conference, the parties also informed that Court that there is primary insurance for $1,000,000, excess insurance for $10,000,000, and a self-insured retention of $11,000,000. Thus, to the extent that a verdict may exceed coverage in this matter, Marks will have knowledge regarding ET360's assets.

4

October 25, 2016, defines the "Designated Employee Representative (DER)" as "[c]ompany personnel with oversight of the company Drug and Alcohol program and authorized by the company to receive test results and make required decisions regarding test results." (Docket No. 55-7 at 4). The MedTox Federal Drug Testing Custody and Control Form includes Marks as the recipient of Roles's drug testing results, and Roles's Alcohol Testing Form lists Marks as the "DER." (Docket Nos. 55-8, 55-9). Roles's test results, showing that Roles had tested positive for methamphetamines, were addressed to Marks. (Docket No. 55-10). Given the exhibits provided by Plaintiff, the Court rejects as meritless Defendants' argument that Marks has no first-hand knowledge of the underlying facts relating to this matter.

To the extent that Defendants argue that Marks's deposition could be considered to be an "apex" deposition, the Court concludes that same is not sufficient to bar it. "The 'apex doctrine' is an analytic framework used by courts is assessing whether to permit the depositions of individuals at the 'apex' of corporations and other entities." *United States ex rel. Galmines v. Novartis Pharm. Corp.*, No. 06-CV-3213, 2015 U.S. Dist. LEXIS 109997, at *3 (E.D. Pa. Aug. 20, 2015). "The doctrine recognizes that depositions of high-level officers severely burdens those officers and the entities they represent, and that adversaries might use this severe burden to their unfair advantage." *Id.* But, the apex doctrine does not apply where an officer possesses personal knowledge of the facts underlying this litigation. *In re Tylenol (Acetaminophen) Mktg. Sales Practices & Prods. Liab. Litig.*, No. 14-MC-72, 2014 U.S. Dist. LEXIS 89981, at *7 (E.D. Pa. July 1, 2014) ("Federal courts have the ability to prohibit the depositions of high-level executives in cases where the executive has no firsthand knowledge of the facts, under a theory which has come to be known as the apex doctrine.").

As discussed above, the documents that Plaintiff has provided to the Court plainly

demonstrate that Marks possesses personal knowledge of the facts underlying this litigation. (*See* Docket Nos. 55-1, 55-2, 55-3, 55-4, 55-5, 55-6, 55-7, 55-8, 55-9, 55-10). The apex doctrine, therefore, does not preclude Marks's deposition. *See, e.g.*, *Scranton Prods. v. Bobrick Washroom Equip., Inc.*, No. 14-CV-853, 2017 U.S. Dist. LEXIS 19488, at *7 n.1 (M.D. Pa. Feb. 10, 2017) (holding that the apex doctrine did not apply where the officials had knowledge that could not be obtained through the depositions of the defendant's other employees); *In re Tylenol (Acetaminophen) Mktg. Sales Practices & Prods. Liab. Litig.*, 2014 U.S. Dist. LEXIS 89981, at *11 (same); *Otsuka Pharm. Co. v. Apotex Corp.*, No. 07-1000, 2008 U.S. Dist. LEXIS 73515, at *15-16 (D.N.J. Sept. 12, 2008) (noting that "there is not a protective blanket that prohibits discovery from highly-placed executives" and denying the defendant's motion for a protective order because the defendant's chief executive officer had unique knowledge that other witnesses were unable to provide).

The Court further finds that Defendants have failed to meet their burden to establish good cause under Rule 26(c). Defendants do not address the factors used to determine whether good cause exists. (Docket No. 54). Rather, Defendants merely make bald assertions that Marks did not hire, train, or supervise Roles and that his knowledge would be "duplicative" of the knowledge of Freeman, Elder, and James. (*Id.* at 4-5). As discussed above, Plaintiff's discovery request is appropriate in this Court's estimation. *See, e.g.*, *Otsuka Pharm. Co.*, 2008 U.S. Dist. LEXIS 73515, at *15-16 (denying protective order because the defendant's chief executive officer had unique knowledge that other witnesses were unable to provide); *see also Johnson v. Jung*, 242 F.R.D. 481, 485 (N.D. Ill. 2007) (denying protective order where evidence suggested "knowledge of the incidents forming the basis of plaintiff's claim"); *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002) (denying protective order where evidence

demonstrated "personal knowledge of and involvement in certain relevant matters").

As a final matter, the Court suggests that the deposition be taken after all other witnesses have been deposed, that it be narrowly focused, and that it be scheduled at a time that is convenient for Marks.

For these reasons,

IT IS HEREBY ORDERED that Defendants' request that the Court enter a protective order prohibiting the deposition of Jonathan Marks, (Docket No. [54]), is DENIED.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: January 26, 2018

cc/ecf: All counsel of record